UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 FEB -7 P 3: 59
DISTRICT OF MASS.

| | |
|---|---|
| ABIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL L. TURNBULL, <br><br> Defendant. | Civil Action No. 05-10105-NMG |

### PLAINTIFF ABIOMED, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff ABIOMED, Inc. ("ABIOMED") respectfully submits this memorandum of law in opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Court Docket No. 2).

Defendant Michael L. Turnbull ("Turnbull"), a long-time director of sales at ABIOMED's direct competitor, has knowingly misappropriated ABIOMED's highly confidential trade secrets from sources under contract with ABIOMED and published this inside information commingled with false, defamatory and disparaging statements about ABIOMED's business and products on an Internet message board devoted solely to discussion of ABIOMED. Turnbull now moves to dismiss this action on the ground that he is not subject to the jurisdiction of this Court. Because over the course of his four-year smear campaign, Turnbull has knowingly targeted not only ABIOMED, a Massachusetts company, but ABIOMED's employees, researchers, customers and investors, all using (by his own description) Massachusetts "sources" and "contacts," Defendant's motion fails.

## BACKGROUND

### Turnbull's Management of Thoratec's Massachusetts Sales and Clinical Operations

Between 1996 and 2004, Turnbull was employed as the Director of Sales and Clinical Services for Thoratec Corporation ("Thoratec"), a company that sells the Thoratec® and Heartmate® line of ventricular assist devices that directly compete with products sold by ABIOMED. See Affidavit of Michael L. Turnbull ("Turnbull Aff."), ¶ 4; Declaration of Gabriel M. Helmer ("Helmer Decl.") Exs. A-B, Company information available from Thoratec website; Helmer Decl. Ex. C, Message No. 13372 ("[T]he two companies are in direct competition."). Thoratec maintains a significant presence in Massachusetts. In October 2000, Thoratec assumed ownership of Thermo Cardiosystems, Inc., a Massachusetts company, in a $571 million deal. See Helmer Decl. Ex. D, *Thoratec buys firm for $571 million*, E. Bay Bus. Times, Oct. 4, 2000. Thoratec currently maintains facilities in Burlington, Massachusetts employing Massachusetts residents, engages in clinical testing in Massachusetts, is registered to do business in Massachusetts, and in fact sells its Thoratec® and Heartmate® lines of ventricular assist devices Massachusetts. See Helmer Decl. Ex. A.

For over seven years, including the time period relevant to this lawsuit, Turnbull supervised Thoratec's sales and clinical staff in Massachusetts. Turnbull Aff., ¶ 4. Turnbull's duties included regular trips to Massachusetts and telephone contact with Thoratec sales and clinical staff in Massachusetts (Turnbull's "direct reports"). Turnbull Aff., ¶ 4. In consequence of Turnbull's position as Director of Sales and Clinical Services, Turnbull supervised Thoratec's Massachusetts operations and thus derived compensation from the sales and clinical activities he supervised here. Turnbull is also a long-time Thoratec stockholder. See Helmer Decl. Ex. E, Message No. 19038 ("I have a fairly large percentage of my portfolio in THOR.").

### ABIOMED and the AbioCor® Device

ABIOMED was founded in Danvers, Massachusetts in 1981 for the singular purpose of creating devices to prevent heart failure. ABIOMED is now a publicly traded company that develops, manufactures and markets innovative cardiovascular products such as the AbioCor® artificial heart, the world's first completely self-contained replacement heart. In his capacity as the director of sales, Turnbull has known for some time that ABIOMED, one of Thoratec's direct competitors, is primarily located in Massachusetts. See Helmer Decl. Ex. F, Message No. 13933 ("I hear from my contacts in Boston that the work environment @ ABMD is not quite what it used to be.").

The AbioCor® device is the subject of an initial clinical trial being conducted under an Investigational Device Exemption from the United States Food and Drug Administration ("FDA"). In connection with the initial clinical trial, ABIOMED obtained FDA approval to implant the AbioCor® device in human patients.

ABIOMED, like Thoratec and other medical device companies, strictly limits access to information related to the ongoing AbioCor® clinical trials. ABIOMED's employees, consultants, customers, suppliers and research partners enter into confidentiality agreements at the commencement of their relationship with ABIOMED in which they agree not to disclose any proprietary and confidential information such as details of the ongoing AbioCor® clinical trial. The confidentiality agreements in question recite that each agreement is to "be construed as a Massachusetts contract under seal and shall be interpreted in accordance with the law of the Commonwealth of Massachusetts." See Helmer Decl. Ex. G, Example of an ABIOMED Confidentiality Agreement (redacted).

Confidential details regarding the AbioCor® clinical trial, such as the date, time and location of an implantation procedure, reflect highly personal and private details of a patient's condition and treatment and they also reveal highly confidential ABIOMED decisions relating to the development and commercialization of the AbioCor® device. Similarly, other facts such as the incidence of adverse events can severely impact the perceived likelihood of FDA approval and commercial viability of a product in an ongoing clinical trial. Because of considerable scientific and business interest in the AbioCor® device, this confidential information is highly sought after by the media, investors and ABIOMED competitors.

<u>Turnbull's Massachusetts-Focused Smear Campaign</u>

On December 29, 2000, Turnbull registered as a user on public Internet message boards maintained by Yahoo! Inc. ("Yahoo!") for the express purpose of starting the smear campaign that is the subject of this dispute. Yahoo! provides public message boards dedicated to particular subjects, including a message board devoted solely to discussion of ABIOMED that was started in 1997. (While any Internet user may read messages on Yahoo! message boards, one must register as a Yahoo! user in order to post messages.) Turnbull selected the anonymous Internet username "walterj1190" and provided the fake name "Carl Froben" to further hide his identity. See Helmer Decl. Ex. H, Yahoo! Account Management statement.

Between December 2000 and September 2004, Turnbull engaged in "constant attacks on Abioworld" (Helmer Decl. Ex. J, Message No. 3011), meaning the Massachusetts company and its Massachusetts employees. As Turnbull repeated in his postings "over and over again" during the four years that was a regular contributor to the ABIOMED board, "I have a personal issue with the company and some of the people who work for [ABIOMED]." Helmer Decl. Ex. C. Turnbull was well aware that ABIOMED was located in Massachusetts and involved in clinical

trials with other Massachusetts institutions. See Helmer Decl. Ex. K, Message No. 14031 (describing Brigham & Women's Hospital and Massachusetts General Hospital as "those boys in Boston ... [r]ight in [ABIOMED's] backyard."), Message No. 13446 ("The Boston Hospitals are scared to death to pull the trigger on a patient because the results to date have sucked and the proximity to ABMD adds that much more pressure to the situation.").

Turnbull announced throughout his postings that he was privy to ABIOMED inside information that reflected negatively on the company. See Helmer Decl. Ex. L, Message No. 18452 ("It is because of the wealth of information that I have that I do not invest in the company!"). Turnbull stated: "when I slam ABMD I speak from experience and first hand knowledge." Helmer Decl. Ex. M, Message No. 3870. He also claimed to have "regular access to some of the surgeons heavily involved" in the development and testing of ABIOMED products (Helmer Decl. Ex. N, Message Nos. 8968), and boasted that his information came directly from "Phase I [clinical] investigators" who had participated in confidential ABIOMED clinical trials. See Helmer Decl. Ex. O, Message Nos. 6203.

Despite Turnbull's recent averment that he does not recall obtaining information from Massachusetts sources (Turnbull Aff., ¶ 8), his prior statements suggest otherwise. In July 2002, Turnbull boasted on the ABIOMED message board that he obtained information about events occurring within ABIOMED's corporate headquarters from "my contacts in Boston." Helmer Decl. Ex. F. Though Turnbull never identified these Boston contacts, in other postings, he suggested that they could be individuals throughout ABIOMED's organization. Turnbull stated that he knew ABIOMED "reps and managers" as well as ABMD accounts. Helmer Decl. Ex. P, Message Nos. 7175, 4109. Turnbull's knowledge of the status of clinical trials at Massachusetts research hospitals indicate that it is possible, if not likely, that his "contacts in Boston" included

not only ABIOMED personnel but also ABIOMED research partners. Helmer Decl. Ex. K, Message Nos. 14031, 13446. As these postings demonstrate, Turnbull has likely obtained "inside information" from Massachusetts residents obligated to ABIOMED under confidentiality agreements governed by Massachusetts law.

Turnbull's postings often discussed at length events at ABIOMED headquarters in Danvers, Massachusetts and decisions made by ABIOMED officers at the same location. Helmer Decl. Ex. Q, Message Nos. 18516, 18532 (an exchange in which Turnbull advised another user that he should not have all his "chips" in "Danvers, Mass."), Message No. 18118 (discussing strategies of former ABIOMED CEO Dr. Lederman). Other topics of discussion included activity at Boston hospitals, conference calls with ABIOMED officers in Massachusetts, press releases from ABIOMED headquarters in Danvers, Massachusetts, articles in the Boston Globe, and other news originated in or pertaining to Massachusetts. See Helmer Decl. Ex. R, Message Nos. 13146 ("activity in Boston"), 13070 (Boston Globe article), 12835 (ABIOMED's Danvers, Massachusetts press release), 13446 ("The Boston Hospitals"), 17611 (referencing two Boston hospitals by name).

Turnbull's scheme was to build credibility through his disclosures of accurate, confidential information and then use that credibility to further damage ABIOMED by posting false and defamatory statements. For instance, Turnbull posted that there was a "100% stroke rate with the Abiocor," (Helmer Decl. Ex. S, Message No. 18259) in other words, that the AbioCor® caused significant adverse events in 100% of patients. "100% of the [AbioCor®] patients have suffered strokes." Helmer Decl. Ex. S, Message No. 18267. These were knowingly false and damaging statements. In another instance, Turnbull claimed that

ABIOMED was "on the verge of being forced [by the FDA] to shut down that [AbioCor®] trial." Helmer Decl. Ex. T, Message No. 17627.

Turnbull specifically targeted Massachusetts residents with these postings. Even though Turnbull elected not to display his geographic location, several users to whom Turnbull regularly posted messages openly identified themselves as residents of Massachusetts. Turnbull engaged in direct dialogue with a regular user named "zenithseeker" who indicated that he was a resident of Boston, Massachusetts, and Turnbull's false claims about the AbioCor® trial were part of the message board "discussion" involving him. See Helmer Decl. Ex. U, Message No. 13111 (posted in response to Message No. 13109 by "zenithseeker" of "Boston, Mass."); Helmer Decl. Ex. T, Message No. 17626. Turnbull also habitually "baited" users named Ken ("hightecheast" of "Massachusetts") (Helmer Decl. Ex. V, Message Nos. 1809, 1858, 2549) and "susiepickle" (also a Massachusetts user). Helmer Decl. Ex. W, Message No. 13410.

Turnbull bragged that he regularly posted messages bashing ABIOMED to these Massachusetts users in the effort to "stir[] up trouble." Helmer Decl. Ex. C, Message No. 13372. As Turnbull admitted in the same message: "I get a kick out of the trouble I casue [sic] here." Helmer Decl. Ex. C, Message No. 13372. Indeed, he claimed that even ABIOMED officers read the messages he posted on the ABIOMED message board and sometimes took action in response to his messages. See Helmer Decl. Ex. X, Message No. 19134 (explaining sale of stock by former ABIOMED CEO Lederman with: "He reads this board and sa[w] my recommendation to short the stock.").

Though ABIOMED has yet to comprehensively catalogue the more than 20,000 messages posted on the ABIOMED message board, it is believed that Turnbull, as a regular

contributor, posted hundreds of messages on the ABIOMED message board between December 2000 and August 2004.

In June 2004, when the full extent of "walterj1190" postings was assessed, ABIOMED filed a complaint in the Superior Court of Suffolk County, Massachusetts against numerous John Doe defendants in the effort to identify the individual or individuals behind those postings. After identifying Turnbull as "walterj1190," ABIOMED brought the instant action naming Turnbull in Superior Court. Turnbull removed this matter on January 14, 2005.

## ARGUMENT

In view of the facts set forth by Turnbull's own message board postings, this Court's exercise of personal jurisdiction over Turnbull is appropriate under both the Massachusetts long-arm statute and the Due Process Clause of the United States Constitution.

### I. Personal Jurisdiction Is Appropriate Under The Massachusetts Long-Arm Statute.

By obtaining ABIOMED confidential information from ABIOMED insiders in Boston, disclosing this confidential information to Massachusetts readers, and then specifically directing messages defaming ABIOMED, a Massachusetts company, to Massachusetts residents, Turnbull has committed tortious injury by "an act in this Commonwealth" within the meaning of the Massachusetts long-arm statute. The Massachusetts long-arm statute specifically authorizes a court to exercise personal jurisdiction over a defendant causing tortious injury "by an act or omission in this Commonwealth." Mass. Gen. Laws ch. 223A, § 3(c). Section 3(c) is satisfied here for several reasons.

First, Turnbull conceded in a message posted in July 2002 that some, if not all, of his sources for ABIOMED inside information were "contacts in Boston." This is not surprising, considering that Turnbull regularly visited Massachusetts to supervise the Massachusetts sales and clinical activities of Thoratec. During the course of Turnbull's Massachusetts activities, he

also communicated with "sources" at two Boston hospitals involved in ABIOMED clinical trials. These Massachusetts contacts underpin ABIOMED's claims, and easily distinguish the present case from those relied upon in Turnbull's argument.

In addition, even though Turnbull at some points may have been physically located outside Massachusetts, his "tortious acts" occurs within Massachusetts because he directed his improper disclosures and defamatory communications to Massachusetts residents. See LaVallee v. Parrot-Ice Drink Products of America, Inc., 193 F. Supp. 2d 296, 300 (where defendant made fraudulent representations from outside Massachusetts to Massachusetts resident, the tortious act was considered "an act in this Commonwealth."); United States v. Swiss Amer. Bank, Ltd., 274 F. 3d 610, 624 (noting that the tortious act of defamation is generally held to occur where the defamatory material is received); Digital Equipment Corp. v. Altavista Technology, Inc., 960 F. Supp. 456, 466-467 (D. Mass. 1997) (tortious act of trademark infringement occurs in Massachusetts when infringing mark is knowingly sent into Massachusetts).[1] Because Turnbull's smear campaign amounted to a pattern of unfair and deceptive acts with the primary goal of disparaging ABIOMED's business, it is also particularly clear that the "tortious act" occurred in Massachusetts, where the intended harm was ultimately felt. "The victim's ingestion of a deceptive statement and the subsequent effects from reliance on it are what give the deceptive statement its venomous sting. The site of the victim's ingestion is therefore critical to a determination of whether the deceptive or unfair acts were committed primarily and substantially

---

[1] Turnbull's argument that § 3 (c) of long-arm statute does not apply is erroneous and based on superseded law. Turbull relies on Judge Caffrey's decision Kolikof v. Samuelson, 488 F. Supp. 881 (D. Mass. 1980), but as a recent opinion notes, "Judge Caffrey himself held that . .. Kolikof has probably been superseded by the Supreme Court in Calder v. Jones." Liu v. DeFelice, 6 F. Supp. 2d 106, 108 (D. Mass. 1998) (referencing the effect of Supreme Court's watershed decision in Calder v. Jones, 465 U.S. 783 (1984)).

in the Commonwealth." Clinton Hosp. Ass'n. v. Corson Group, Inc., 907 F.2d 1260, 1266 (1st Cir. 1990).

Even were this not the case, Turnbull's contacts with Massachusetts are sufficient to exercise personal jurisdiction for tortious acts that occurred outside of Massachusetts. Section 3(d) of the Massachusetts long-arm statute authorizes courts to exercise personal jurisdiction over a defendant "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(d). During the four years that Turnbull was engaged in the smear campaign targeting Massachusetts parties, Turnbull supervised Thoratec sales and clinical staff in Massachusetts, regularly visited Massachusetts, and regularly contacted both his Massachusetts staff and, apparently, ABIOMED insiders in Boston. He was compensated as an employee for these activities in Massachusetts, and he obtained additional financial benefits from doing business in Massachusetts as a Thoratec shareholder. Thus, Turnbull meets several of the various criteria set forth in § 3(d): he regularly did business here, he engaged in a persistent course of conduct here, and he derived revenue from his activities. Any one of these is sufficient.

Far less contact than this has been held to be sufficient to justify the exercise of long-arm jurisdiction. See Venture Tape Corp. v. McGills Glass Wharehouse, 292 F. Supp. 2d 230, 232 (D. Mass 2003). In Venture Tape, a California defendant embedded the trademark of a Massachusetts plaintiff into its website, thereby diverting the plaintiffs potential customers. Id. at 231. Although there was no evidence presented regarding the defendant's sales in Massachusetts, the court held that merely making the infringing website continuously available

to Massachusetts residents was sufficient contact to support jurisdiction under Section 3(d). Id. at 232-33. For the reasons stated above, the case for long-arm jurisdiction over Turnbull is even stronger. Thus, Turnbull clearly had sufficient contact with Massachusetts to justify the exercise of personal jurisdiction under Section 3(d) of the long-arm statute, as well as Section 3(c).

## II.     The Court's Exercise of Specific Jurisdiction is Consistent With Due Process.

This Court's exercise of personal jurisdiction over Turnbull likewise comports with Due Process considerations under the United States Constitution. Because Turnbull has extensive contacts with Massachusetts and because all of those contacts are related to claims in suit, the Court possesses specific jurisdiction over Turnbull. Specific jurisdiction is appropriate in this case because Turnbull's contacts with Massachusetts satisfies the three traditional requirements: (1) the claims underlying the litigation directly arise out or relate to Turnbull's forum-state activities, (2) Turnbull's actions represent a "purposeful availment" of the privilege of conducting activities in the forum state, and (3) this Court's exercise of personal jurisdiction is reasonable. Id. at 144.

### A.     ABIOMED's Claims Are Related to Turnbull's Contacts With Massachusetts.

Exercise of personal jurisdiction over Turnbull is appropriate because there is a "nexus between the defendant's contacts and the plaintiff's cause of action." Digital Equipment 960 F. Supp. at 468, quoting Ticketmaster-New York, Inc. v. Alioto, 26 F. 3d 201, 206 (1st Cir. 1994). Where the defendant's forum-state contact is itself a subject of and causally connected to the claims asserted in the lawsuit, the relatedness requirement is satisfied. See First Act, Inc. v. Brook Mays Music Co., 311 F. Supp. 2d 258 (D. Mass. 2004) (concluding that relatedness test is satisfied where the defamatory emails sent into Massachusetts were the subject of the lawsuit); Mass. School of Law at Andover, Inc. v. A.B.A., 142 F. 3d 26, 36 (1st Cir. 1998) ("[T]he

transmission of facts or information into Massachusetts . . . would of course constitute evidence of a jurisdictional contact directed into the forum state.").

Turnbull's contacts with Massachusetts are in fact the subject of ABIOMED's claims. For over seven years, Turnbull has supervised sales and clinical personnel in Massachusetts, regularly visited his Massachusetts subordinates (his "direct reports") and contacted Massachusetts residents both by phone and via the Internet, in the course of financially benefiting Thoratec and himself. Turnbull's claim that these contacts are unrelated to the claims in the case is not credible. Turnbull obtained confidential information from ABIOMED insiders -- parties under Massachusetts confidentiality agreements -- that included Turnbull's "contacts in Boston." Turnbull then disclosed the details of the AbioCor® clinical trials directly to several known Massachusetts users on the ABIOMED message board. To the very same Massachusetts users, Turnbull posted messages falsely stating that the AbioCor® caused adverse events in all patients and would not be approved by the FDA. These activities damaged ABIOMED and promoted both the success of Thoratec's competing sales strategy and Turnbull's personal financial position as executive and shareholder. In this regard, Turnbull's intentional contacts with Massachusetts, both as Thoratec director and as "walterj1190," are themselves the acts complained of in ABIOMED's claims for misappropriation of trade secrets, tortious interference with ABIOMED confidentiality agreements, defamation, and violation of ch. 93A. Even discounting Turnbull's four year history of tortious communications to Massachusetts Internet users with the primary goal of damaging a Massachusetts company, Turnbull's in-state activities were, by his own admission, the means by which he carried out the intentional torts of which ABIOMED complains.

### B. Turnbull Purposely Availed Himself of The Privilege of Engaging in Tortious Activities In Massachusetts.

Similarly, the exercise of jurisdiction over Turnbull satisfies the "purposeful availment" standard because, over the course of several years, Turnbull engaged in voluntary activity in and directed to Massachusetts that makes the exercise of jurisdiction here reasonably foreseeable. Sawtelle v. Farrell, 70 F. 3d 1381 (1st Cir. 1995), quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980); Digital Equipment, 960 F. Supp. at 468 (concluding that, to meet the "purposeful availment" standard, defendant's activities must be "voluntary - not based on the unilateral actions of another party," and "foreseeable" such that the defendant should reasonably be able to anticipate "being haled into court" in the forum state).

Turnbull's smear campaign was directed to and targeted at ABIOMED, a Massachusetts-based company, and this conduct is sufficient to meet the purposeful availment standard. In addition, Turnbull's own repeated references to Massachusetts are more than sufficient proof of the foreseeability of being haled into court here once his identity was uncovered.[2] In Venture Tape, the court found personal jurisdiction over a California corporation with no presence in Massachusetts who misdirected the Massachusetts plaintiff's potential customers, thereby knowingly damaging Massachusetts company. 292 F. Supp. 2d at 231. Similarly, in the context of a nationally accessible message board, it has been held that jurisdiction was appropriate in the Central District of California even when a defendant posted messages regarding a California company on a message board frequented primarily by out-of-state residents, because the defendant's intentional targeting of the California company amounted to a purposeful availment.

---

[2] See, e.g., Helmer Decl. Ex. F (discussing Turnbull's "contacts in Boston" with inside knowledge about ABIOMED); Helmer Decl. Ex. K, Message No. 14031 (discussing ABIOMED clinical partners Brigham & Women's Hospital and Massachusetts General Hospital as "those boys in Boston ... [r]ight in [ABIOMED's] backyard."); Helmer Decl. Ex. Q, Message Nos. 18516, 18532 (exchange in which Turnbull advised another user that he should not have all his "chips" in "Danvers, Mass."); Helmer Decl. Ex. R, Message Nos. 13146 (discussing "activity in Boston").

See California Software, Inc. v. Reliability Research, Inc., 631 F.Supp. 1356, 1361-64 (C.D.Cal. 1986) (denying motion to dismiss on the grounds that the Court could properly exercise personal jurisdiction) (cited approvingly by Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 805 (9th Cir. 2004)). "Because defendants intentionally influenced third parties to injure the California plaintiffs, defendants should have foreseen answering for the veracity of their statements and the propriety of their conduct in California." Id. at 1362.

Here, the case against Turnbull is even stronger because, unlike both Venture Tape and Califonia Software, Turnbull posted trade secrets and defamatory messages on a message board solely devoted to a Massachusetts company and Turnbull intentionally posted messages directed to known Massachusetts users for the express purpose of damaging that Massachusetts company and its employees. Turnbull cannot deny that his four-year campaign to damage ABIOMED made it foreseeable -- and even likely -- that he would eventually be successful in damaging ABIOMED and thereafter be haled into court in Massachusetts. Indeed, his choice to lie about his name and location in his user registration information is perhaps the best evidence that the present action was entirely foreseeable.

Not only do Turnbull's message board postings provide adequate grounds for finding purposeful availment here, but so does Turnbull's systematic in-state activities as the director of Thoratec's Massachusetts sales and clinical activities, a job that provided Turnbull the professional, personal and financial incentives as well as forum-state contacts to engage in the alleged conduct. Turnbull attempts to paint the jurisdictional issue in this case as based solely on the "mere effects" of Turnbull's activities over the Internet, and argues that "something more" is required to show purposeful availment.[3] In support of this argument, Turnbull cites cases in

---

[3] The defendant wrongly relies upon the "interactivity scale" set forth in Zippo Mfg. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997), and presents the case at bar as resting "between the Zippo poles," based on the

- 14 -

which defendants did not know where the plaintiff resided,[4] in which defendant's *only* connection with the forum was the his or her knowledge that the plaintiff resided there,[5] or where the defendant directed no activities at the forum.[6] These cases are simply unavailing for Turnbull, who stated in his own postings to Massachusetts residents that he was engaged in a lengthy campaign to "slam" a Massachusetts company using information gleaned in whole or in part from "contacts in Boston."

### C.     The Exercise of Personal Jurisdiction Over Turnbull is Reasonable.

The exercise of personal jurisdiction over Turnbull in this action also will be reasonable under the traditional Due Process analysis. Courts typically assess the fairness and reasonableness of an assertion of jurisdiction over a defendant by considering: "(i) the defendant's burden of appearing, (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the judicial system's interest in obtaining the most effective resolution of the controversy, and (v) the common interests of all sovereigns in promoting substantive social policies." LaVallee, 193 F. Supp. 2d at 304, citing World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

These factors favor the exercise of jurisdiction in this case. Turnbull has counsel here and has made no showing that the burden of defending this action in Massachusetts will be "onerous in a special, unusual, or other constitutionally significant way." Id. (citations omitted).

---

character of the ABIOMED message board. Unlike the Zippo case, the company that maintains the message board (in this case, Yahoo!) is not a party. Turnbull is a real person whose actions in utilizing the message board to direct tortious activity at the forum state were active, deliberate and voluntary. The Zippo interactivity scale is irrelevant to the Court's inquiry.

[4] Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002).

[5] Griffis v. Luban, 646 N.W.2d 527 (Minn. 2002); Barrett v. Catacombs Press, 44 F.Supp.2d 717 (E.D. Pa. 1999).

[6] Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002); Noonan v. Winston Co., 135 F.3d 85 (1st Cir. 1998); Imo. Indus. Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998).

Massachusetts has an interest in acts, like the conduct at bar, that cause tortious injury within its borders and directed at its residents. First Act, 311 F. Supp. 2d at 263; Hasbro v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass 1997). In addition, ABIOMED's choice of forum should be accorded "a degree of deference in respect to the issue of its own convenience." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F. 3d 138, 144 (1st Cir. 1995). Moreover, both ABIOMED and Turnbull have conducted business in Massachusetts and, considering Turnbull himself has indicated that he has "contacts in Boston," it is likely the forum in which important witnesses reside. Jurisdiction in Massachusetts is therefore both reasonable and fair.

WHEREFORE, for the reasons stated above, ABIOMED requests that this Court deny Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2).

Respectfully submitted,

ABIOMED, Inc.,
By its attorneys,

_/s/ Michael M. Helmer_

Michael P. Boudett (BBO No. 558757)
Gabriel M. Helmer (BBO No. 652640)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617)832-1000

Dated: February 7, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of February, 2005, I caused a true copy of the above document to be served upon counsel for MICHAEL L. TURNBULL by mail.

_/s/ Gabriel M. Helmer_
Gabriel M. Helmer